**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

Johkie LEE, on behalf of himself, FLSA Collective
Plaintiffs and the Class,

Plaintiff,

-against-

**GRAND SICHUAN EASTERN (NY) Inc., et al.,**

Defendants.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 1/17/2014

12-CV-08652 (SN)

<u>OPINION & ORDER</u>

**SARAH NETBURN, United States Magistrate Judge:**

Before the Court are the defendants' motion for summary judgment and an order to show cause why the defendant, Grand Sichuan Eastern (NY), should not be dismissed from this action without prejudice.[1] For the reasons discussed below, the Court (1) GRANTS the defendants' motion for summary judgment with respect to the defendant An Tong Wang, DENIES the defendants' motion with respect to the defendant American Hoist, and DENIES as moot the defendants' motion with respect to the defendant Grand Sichuan Eastern (NY); and (2) GRANTS the plaintiff's motion to voluntarily dismiss the defendant Grand Sichuan Eastern (NY) WITHOUT PREJUDICE.

<b>PROCEDURAL BACKGROUND</b>

On November 28, 2012, the plaintiff, Jokhie Lee ("Lee"), brought this class action against Grand Sichuan Eastern (NY) ("GSE"), American Hoist, Inc. ("American Hoist"), and An

---

[1] Coincident with his filing of an opposition to the summary judgment brief, the plaintiff Jokhie Lee filed a motion for sanctions on the grounds that defendants' summary judgment motion is frivolous. That motion is resolved by separate order of the Court. The Court has not considered the allegations or arguments raised in the sanctions motion in resolving the motion for summary judgment.

Tong Wang ("Wang")[2] (collectively, the "defendants"), alleging claims for: (1) failure to pay overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"); (2) failure to pay the statutory minimum wage, in violation of FLSA and NYLL; (3) taking an improper tip credit, in violation of NYLL; (4) failure to pay a "spread of hours" premium, in violation of NYLL; and (5) failure to provide proper wage statements, in violation of NYLL.

The Court (Hon. Paul A. Engelmayer) granted Lee's unopposed motion for conditional class certification on February 15, 2013. No other plaintiffs have since opted-in to this action.

On January 11, 2013, the defendants filed their answer and counterclaims against Lee, alleging that Lee's claims are frivolous and caused Wang severe emotional distress, and that Lee damaged American Hoist by on one occasion tampering with the tip amount on a restaurant receipt.

On August 22, 2013, the defendants filed their motion for summary judgment, along with the declaration of An Tong Wang (the "Wang Decl."), the declaration of Wen Yan Gao (the "Gao Decl."), the Statement of Material Facts ("SMF"), and 19 exhibits. On August 23, 2013, upon the parties' consent, Judge Engelmayer referred this action in its entirety to my jurisdiction pursuant to 28 U.S.C. § 636(c). Lee opposed the defendants' summary judgment motion on November 1, 2013, and filed his declaration (the "Lee Decl."), Counter-Statement of Material Facts ("Counter-SMF"), and three exhibits, including excerpts of the May 6, 2013 Deposition of An Tong Wang (the "Wang Dep."). The defendants filed their reply on November 15, 2013, along with a second declaration of An Tong Wang (the "Wang Reply Decl.") and Wen Yan Gao (the "Gao Reply Decl.").

---

[2] Wang's first name is spelled as "Antong" in the plaintiff's complaint and various other filings, but Wang corrects the spelling as "An Tong" in his deposition.

On November 1, 2013, Lee filed a letter expressing his desire to voluntarily dismiss his complaint as to the defendant GSE and requesting that the Court issue an order of dismissal without prejudice as to GSE. The Court issued an Order to Show Cause on this matter on November 4, to which GSE responded on November 12, and to which Lee replied on November 14, 2013.

## FACTUAL BACKGROUND

As a basis for the Court's discussion of all matters resolved in this order, the Court sets forth the material facts submitted by the parties that are supported adequately by admissible evidence and thus deemed uncontroverted. The following facts are admitted to exist without controversy for purposes of the motion for summary judgment. See Local Civ. R. 56.1(c), (d) (stating that facts not "specifically controverted" in the non-moving party's counter-statement of material facts "will be deemed to be admitted for purposes of the motion"); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

The defendant An Tong Wang was a co-owner of GSE when it was incorporated in 2007, and has been the sole owner and shareholder since April 2012. GSE operates a restaurant with the trade names "Grand Sichuan" and "Grand Sichuan Eastern," which is located at 1049 Second Avenue, New York, New York (the "GSE restaurant"). American Hoist was incorporated in 2011, and was originally owned by Wen Hua Gao (Wang's wife) and her two sisters, Wen Yan Gao and Wen Xiu Gao. (Gao Decl. ¶ 4; Wang Decl. ¶ 7.) Shortly thereafter, Wen Xiu Gao transferred her ownership share to her sisters, who each now own 50% of American Hoist's stock (Id.) American Hoist operates a restaurant, also with the trade name "Grand Sichuan Eastern," located at 172 Eighth Avenue, New York, New York (the "American Hoist

restaurant"). (SMF ¶¶ 4, 7.) Gao did not receive prior permission from Wang to use the trade name, and Wang later objected to its usage. (Gao Decl. ¶¶ 6-7). In addition to the two restaurants at the above addresses, there are at least two other restaurants in the New York City area that use "Grand Sichuan" in their trade name. (Ex. D; Gao Decl. ¶ 5.)

American Hoist and GSE each controlled its own day-to-day management, maintained separate bank accounts and financial records, had separate insurance policies and tax responsibilities, and did not share any losses or profits with the other. American Hoist and GSE promote their businesses on the same website, www.grandsichuanny.com, which contains links directing users to separate websites for either restaurant.

Wang has applied for at least one business license on behalf of the American Hoist restaurant and has served as a guarantor for the restaurant's rental lease. (Counter-SMF ¶ 8.) When American Hoist applied for a liquor license for its restaurant on May 4, 2011, Wang served as a guarantor and is listed on the New York State Liquor Authority public website as the "principal" of American Hoist. (Ex. H.) Because neither Wang nor his wife or sister-in-law spoke English, they retained a "liquor license application service" to complete and file the application. (SMF ¶ 14; Wang Decl. ¶¶ 20-21.) The defendants never represented to the service firm or the Liquor Authority that Wang was a principal of American Hoist, and the defendants did not learn that Wang was listed as the principal on the license until the discovery stage of this action. (Id.) In addition, Wang has on occasion assisted the American Hoist restaurant by helping to "screen" and "recommend" potential employees; by providing "technical support," including discussing "how to cook the dishes"; and by providing advice on compliance with wage and hour compensation. (Counter-SMF ¶ 8, Ex. B (Wang Dep. at 14:19-15:14, 19:14-22, 40:25-41-25).)

Jokhie Lee worked as a waiter at the American Hoist restaurant for approximately nine months during 2011 and 2012. He never worked at the GSE restaurant. During his employment, Lee received at least $242 per week in tips, free meals, and a monthly fixed salary of $1,500.[3] (SMF ¶¶ 16, 17; Counter-SMF ¶¶ 16, 17; Ex. O.) Lee signed at least 17 weekly time sheets indicating that he worked a maximum of 40 hours per week, which would result in a wage of $9.375 per hour. Lee asserts, however, that the number of hours recorded on these time sheets was consistently inaccurate and that the defendants forced him and the other American Hoist restaurant employees to sign them.

## LEGAL DISCUSSION

The defendants move for summary judgment on separate grounds as to Wang and American Hoist.[4] With respect to Wang, the defendants submit evidence that they argue establishes as a matter of law that Wang was not Lee's employer under the FLSA or NYLL definitions and thus cannot be found liable for the alleged violations. With respect to American Hoist, the defendants submit evidence that they argue establishes as a matter of law that the

---

[3] Lee purports to dispute the defendants' assertion that he earned at least $242 per week in tips. To controvert this proposed fact, Lee cites to his declaration, in which he states, "Although I was compensated at the same rate throughout my employment period, I was required to perform a variety of roles. I worked primarily as a server. However, during certain days of the week, I would be requested to act as a host. On such days, I would not be entitled to receive any tip compensation." (Lee Decl. ¶ 4; Counter-SMF ¶ 16.) Lee's testimony in his declaration, which the Court accepts as true for the purposes of this motion, does not dispute and is not inconsistent with the defendants' contention regarding Lee's weekly tip earnings. The Court therefore finds this fact to be uncontroverted.

[4] The defendants move for summary judgment in favor of Wang and GSE on the ground that, because they cannot be considered Lee's "employer" under the FLSA or NYLL definitions, they are improper parties. After the defendants filed their summary judgment motion, Lee moved to voluntarily dismiss GSE, but not Wang, as a defendant, without prejudice. As discussed *infra*, the defendants do not oppose dismissing GSE from the complaint, but they request that such dismissal be with prejudice. The Court resolves Lee's motion to voluntarily dismiss GSE in this order. The Court thus finds the defendants' motion for summary judgment moot as it pertains to GSE.

American Hoist restaurant did not violate FLSA requirements regarding minimum wage or overtime compensation in their employment of Lee.[5]

## I.       Summary Judgment Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury

_____

[5] The defendants move for summary judgment on Lee's entire complaint, but they do not offer evidence or argument in favor of summary judgment as to Lee's state law claims against American Hoist regarding tip credits, spread of hours, or wage statements under the NYLL. In their reply, the defendants assert that, in expectation that the Court would grant summary judgment against Lee as to his FLSA claims, the Court, should decline to exercise supplemental jurisdiction over his state law claims. (See Reply at 9.) Because the defendants have submitted no evidence as to Lee's s NYLL claims against American Hoist, the Court denies the defendants' summary judgment motion to the extent it seeks dismissal of such claims.

to return a verdict in its favor." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. See Scott v. Harris, 550 U.S. 372, 378 (2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). "[R]ather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation and internal quotation marks omitted).

In addition, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local Civil] Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Giannullo v. City of New York, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying the assertions in the Rule 56.1 statement "would derogate the truth-finding functions of the judicial process by substituting convenience for facts")). The Court of Appeals for the Second Circuit has "long recognized that [because] summary judgment is a drastic device that cuts off a party's right to present his case to a jury, . . .

the moving party bears a heavy burden of demonstrating the absence of any material issues of fact." Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)) (internal quotation marks and citations omitted); see also Am. Home Assurance Co. v. ZIM JAMAICA, 418 F. Supp. 2d 537, 542 (S.D.N.Y. 2006) ("Because summary judgment is a drastic device, the movant's burden is a heavy one.").

## II.     Whether Wang Is Entitled to Summary Judgment on Lee's FLSA and NYLL Claims

### A.     Law Governing Employer Status

The question of whether any defendant is an FLSA "employer" is a "mixed question of law and fact," involving "the application of a legal standard to a particular set of facts." Zheng v. Liberty Apparel Co. Inc. ("Zheng II"), 617 F.3d 182, 185-86 (2d Cir. 2010) (internal citations and quotations omitted). Only "the ultimate decision as to whether a party is an employer," is a legal question. Zheng v. Liberty Apparel Co. Inc. ("Zheng I"), 355 F.3d 61, 76 (2d Cir. 2003). The "historical findings of fact that underlie each of the relevant factors" and the "findings as to the existence and degree of each factor" are factual questions. Id. Although mixed questions of law and fact are particularly well-suited for jury determination, summary judgment may be granted where there are no disputes as to any genuine issue of material fact. See e.g., Jean–Louis v. Metro. Cable Commc'ns, Inc., 838 F. Supp. 2d 111, 119 n.4 (S.D.N.Y. 2011) ("Nothing . . . casts doubt on the propriety of treating [employment status] as a question of law where there are no genuine issues of material fact requiring a jury trial.")

Under both FLSA and the NYLL, personal liability may be imposed on employers for wage and hour violations. Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003). Under FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme

Court has emphasized that this is an expansive definition with 'striking breadth.'" Raquer v. Cafe Buon Gusto Corp., 11 Civ. 7774 (PAE), 2012 WL 4494882, at *2 (S.D.N.Y. Sept. 28, 2012) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)); see also Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) ("The [FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy."); Ansoumana, 255 F. Supp. 2d at 192 (quoting Reich v. Circle C Investments, Inc., 998 F.2d 324, 329 (5th Cir. 1993) ("'[T]he FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'"). The Second Circuit Court of Appeals treats terms such as "employer" "for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008).

In cases where the parties dispute whether an individual defendant is the plaintiff's employer, courts apply the "economic reality" test. See, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 264-65 (S.D.N.Y. 2008); Raquer, 2012 WL 4494882, at *2-3; Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725 (DC), 2010 WL 4159391, at *7-8 (S.D.N.Y. Sept. 30, 2010). Under this test, originally set forth in Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), and established in this circuit in Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984), courts assess the following non-exclusive factors: whether the alleged employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See Zheng I, 355 F.3d at 67. "These factors are not

exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." Yu G. Ke, 595 F. Supp. 2d at 264 (citing Zheng I, 355 F.3d at 71). Under the economic reality test, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

While "in the end, it is all about control," Glatt v. Fox Searchlight Pictures Inc., 11 Civ. 6784 (WHP), 2013 WL 2495140, at *9 (S.D.N.Y. June 11, 2013), control "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do[ ] not diminish the significance of its existence," Herman, 172 F.3d at 139 (alteration in original) (citation omitted); see also Irizarry v. Catsimatidis, 722 F.3d 99, 111 (2d Cir. 2013).

The definitions of "employer" are functionally identical under FLSA and the NYLL, and courts in this circuit use the same tests to determine "employer" status under both laws. See Hernandez v. La Cazuela de Mari Rest., Inc., 538 F. Supp. 2d 528, 534-35 (E.D.N.Y. 2007) (citing Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005)); Glatt, 2013 WL 2495140, at *6; cf. Hart v. Rick's Cabaret Int'l, Inc., 09 Civ. 3043 (PAE), 2013 WL 4822199, at *31 (S.D.N.Y. Sept. 10, 2013) (applying the "economic reality" test to FLSA and the NYLL but noting, "To be sure, the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's, see Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013), but there is no case law to the contrary").

### B.    The Parties' Evidence

The defendants submit the following evidence to show that Wang was not Lee's

employer under the FLSA and NYLL definitions:

(1)    Declarations from Wang and Gao stating that: (A) Wang has had no involvement in American Hoist with respect to any of the specified "economic reality" test factors; (B) American Hoist, under the Gao's ownership, and GSE, under Wang's ownership, each controlled its own day-to-day management, maintained separate bank accounts and financial records, had separate insurance policies and tax responsibilities, and did not share any losses or profits with the other; and (C) Wang only acted as a guarantor for American Hoist's liquor license and that the license's recording of Wang as a principal of American Hoist was the result of an error committed by the liquor license application service;

(2)    GSE's February 14, 2007, incorporation filing with New York Department of State, showing Wang as the CEO and listing no other officers (Ex. A);

(3)    GSE's corporate records, including its certificate of incorporation, showing Wang as the sole officer and sole shareholder after a transfer of stock from Ding Gen Wang to Wang (Ex. B);

(4)    GSE's October 2011 bank statement (Ex. E);

(5)    GSE's 2011 U.S. Corporation Income Tax Return, showing Wang and Ding Gen Wang as each owning 50% of GSE's stock, and GSE's 2012 U.S. Corporation Income Tax Return, showing Wang as owning 100% of GSE's stock (Ex. F);

(6)    Charts produced by GSE and American Hoist in response to discovery requests in this litigation, listing the employees by position and compensation for each entity, and showing no overlap in employees (Ex. G);

(7)    Printouts of the New York State Liquor Authority's public website, showing that American Hoist filed for a liquor license on May 4, 2011, and again on February 13, 2012, for the American Hoist restaurant, with both filing records listing Wang as the principal of American Hoist (Ex. H);

(8)    American Hoist's March 30, 2011, incorporation filing with New York Department of State, showing Wen Hua Gao as the CEO and listing no other officers (Ex. I);

(9)    American Hoist's corporate records, including its certificate of incorporation, showing the three Gao sisters as the initial Board of Directors, Wen Hua Gao as the president, and Wen Yan Gao as the vice president (Ex. J);

(10)   American Hoist's October 2011 bank statement, showing that all checks from the account are signed by Wen Hua Gao  (Ex. L); and

(11)   American Hoist's 2011 U.S. Corporation Income Tax Return, showing the three Gao sisters as the only shareholders, and American Hoist's 2012 U.S. Corporation Income Tax Return, showing Wen Hua Gao and Wen Yan Gao as each owning 50% of American Hoist's stock (Ex. M).

Lee submits the following evidence to show that there is a genuine dispute of material fact as to whether Wang was his employer under the FLSA and NYLL definitions:

(1)   A declaration from Lee stating that: (A) staff schedules for the American Hoist restaurant were subject to Wang's approval; (B) the defendants shifted employees between the GSE restaurant and the American Hoist restaurant; and (C) Wang is American Hoist's majority owner and shareholder;

(2)   The printout of the New York State Liquor Authority's public website listing Wang as a principal of American Hoist (Ex. A);

(3)   Excerpts of Wang's May 6, 2013 deposition, in which Wang testified that he provided advice to his wife and sister-in-law as the owners of American Hoist regarding job applicants about whom he had personal knowledge; technical support, including how to cook certain dishes; and basic compliance with federal wage and hour laws (Ex. B); and

(4)   Lee's complaint in this action (Ex. C).

### C.   Whether the Evidence Shows a Genuine Dispute of Material Facts

With respect to whether Wang was Lee's employer under the FLSA and NYLL definitions, the Court finds that Lee's evidence sufficiently controverts one of the defendants' proposed facts such that there exists a genuine dispute. The defendants submit in their SMF that "[n]o employees were shared by both corporations. GSE and [American Hoist] never interchanged employees between them." (SMF ¶ 12 (citing the Wang and Gao declarations and Ex. G, a chart listing the employees of both restaurants that was created for the purpose of this litigation).) To dispute this fact, Lee submits his declaration, in which he states, "During my employment, I personally observed that Defendants interchangeably shifted employees among

[GSE's restaurant and American Hoist's restaurant]." (Lee Decl. ¶ 13.) The parties' contradictory facts are supported with adequate testimonial evidence and thus require a credibility determination, which is the proper function of a jury, not the Court. See Anderson, 477 U.S. at 255. The Court thus resolves this disputed fact in the light most favorable to Lee in determining whether Wang is entitled to summary judgment as a matter of law. See Scott, 550 U.S. at 378.

Lee further purports to dispute the defendants' proposed fact that, "[a]t the time relevant to Plaintiff's claims, between [GSE and American Hoist], no shareholders, officers, directors, or managers at any levels of one corporation sat at the other corporation." (SMF ¶ 8.) Lee contends that Wang is a "principal" of American Hoist and submits American Hoist's liquor license, listing Wang as a principal, as evidence. (Counter-SMF ¶ 8.) Specifically, Lee states in his declaration that Wang is the "owner and controlling shareholder" of the American Hoist restaurant. (Lee Decl. ¶ 13.) The Court finds that the parties' evidence shows that there are no triable issues of fact as to whether Wang is an owner or a shareholder of American Hoist. American Hoist's incorporation filing with the New York Department of State, certificate of incorporation, corporate bylaws, bank statement showing all checks signed by only Gao, and 2011 and 2012 income tax returns are sufficient such that no reasonable trier of fact could find that Wang is an owner, director, or shareholder of American Hoist. Nevertheless, though Wang was not an owner, director, or shareholder of American Hoist during the period of Lee's employment, Lee's evidence, namely the liquor license and Wang's deposition transcript, are sufficient to raise an issue of fact as to Wang's role and the extent of his involvement in American Hoist.

Finally, Lee purports to contradict the defendants' proposed fact that Wang "possessed no authority to control work schedules or employment conditions of Plaintiff or any other employees of [American Hoist]." (SMF ¶ 11 (citing the Wang and Gao declarations).) To demonstrate a genuine dispute of material fact, Lee cites to his declaration testimony in which he states that "front of the house staff schedules [were] subject to approval by Antong Wang." (Lee Decl. ¶ 4.) The Court finds this testimony insufficient to create genuine dispute of material fact. Under Federal Rule of Civil Procedure 56(c)(4), a declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." A witness is competent to "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. of Evid. 602. Further, a "party opposing the motion [for summary judgment] must set forth concrete particulars. . . . It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts. . . ." BellSouth Telecommunications, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotation marks and citation omitted, alteration in original); see also Ying Jing Gan, 996 F.2d at 532 (holding that the party opposing summary judgment "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). Lee does not testify that he has personal knowledge that the staff schedules were subject to Wang's approval and provides no evidence or basis to support this claim. Further, Lee neither declares nor provides evidence indicating that he has ever personally interacted with Wang or was aware of Wang before the litigation, and Wang declares that he "did not know [Lee] until . . . after commencement of this action." (Wang Reply Decl. ¶ 6). Therefore, the Court finds that Lee has not set forth sufficient evidence to dispute the

defendants' proposed fact and supporting evidence that Wang neither controlled Lee's work schedule nor had the authority to do so.

Therefore, the only facts in dispute on the issue of whether Wang was Lee's employer are (1) whether GSE and American Hoist shifted employees between the GSE restaurant and the American Hoist restaurant, and (2) the nature and extent of Wang's role in American Hoist. Resolving these disputed facts in the light most favorable to Lee, the Court next considers whether there is sufficient evidence for a reasonable jury to conclude that Wang was Lee's employer under the FLSA and NYLL definitions.

### D.    Whether Wang Is Entitled to Summary Judgment as a Matter of Law

In light of Lee's evidence demonstrating disputed facts, the Court must determine whether this evidence is sufficient such that a reasonable jury could find that Wang was Lee's employer under FLSA and the NYLL. See Byrnie, 243 F.3d at 101 ("Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (quoting Anderson, 477 U.S. at 249-50, 252) ("'If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted.' To defeat a motion, 'there must be evidence on which the jury could reasonably find for the [non-movant].'") (internal citation omitted, alterations in original); Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 06 Civ. 3123 (CSH), 2008 WL 4449353, at *5-6 (S.D.N.Y. Sept. 29, 2008).

### 1.    Economic Reality Test

The Court considers the economic reality test, as illuminated by the following factors and others that may be salient, to determine whether a reasonable jury could find that Wang was

Lee's employer under FLSA and the NYLL and thus can be held personally liable for wage and hour violations: whether Wang (1) had the power to hire and fire American Hoist employees; (2) supervised and controlled employee work schedules or conditions of employment at the American Hoist restaurant; (3) determined the rate and method of payment at the American Hoist restaurant; and (4) maintained employment records of American Hoist employees. See Barfield, 537 F.3d 132 at 141-42; Zheng I, 355 F.3d at 67.

Regarding the first factor, whether Wang had hiring and firing power, Wang testified at his deposition that he had provided his opinion on potential employees to his wife and sister-in-law, the owners of American Hoist, but that he never hired or fired anyone on American Hoist's behalf. When asked if he could fire an American Hoist employee upon witnessing misconduct at the American Hoist restaurant, Wang stated, "I do not have such authority." (Wang Dep. at 19:14-20:9.) Regarding the second factor, whether Wang had the ability to supervise or control work schedules or conditions, Lee states in his declaration that the two restaurants shifted employees between them. But no other evidence presented – including staff schedules of both restaurants – supports this conclusion. Wang also states in his declaration that he had "no power" to "supervise Plaintiff or any other employees of [American Hoist]," and further that he "possessed no authority to control work schedules or employment conditions of other employees at [American Hoist]." (Wang Decl., ¶15.) Regarding the third factor, whether Wang had control over the rate and method of payment, Wang testified that he gave his wife and sister-in-law advice on compliance with wage and hour compensation law. But he also stated that all actual decisions on compliance were made by American Hoist. As to the fourth factor, whether Wang maintained employment records for American Hoist employees, Lee did not submit evidence to

dispute Wang and Gao's testimony that Wang does not maintain American Hoist employment records.

On the evidence submitted by the parties, no reasonable jury could find that any of the above factors indicate that Wang was Lee's employer under the FLSA and NYLL definitions. There is no authority to support the proposition that providing an employment recommendation constitutes hiring and firing power or that explaining basic legal requirements constitutes control over the rate and method of payment. And even if a jury did find that the two restaurants shifted employees between them, this would only show that Wang had some control over where certain American Hoist employees would perform their services; it would not show that Wang had control over American Hoist work schedules or employment conditions or whether American Hoist employees were properly compensated. Thus, any control that Wang exerted over individual American Hoist employees by temporarily shifting them to his restaurant, first, is of a type that is only minimally salient to finding Wang potentially liable for wage and hour violations and, second, did not affect Lee, who never performed services at GSE.

### 2.      Totality of the Circumstances

In addition to the above factors, the Court considers the evidence that American Hoist's liquor license lists Wang as a "principal," along with the evidence that this information was incorrectly written on the application by a liquor license application service firm retained by Wang, his wife, and his sister-in-law because they did not speak English, and that none of American Hoist's corporate records or public filings lists him as a principal or employee in any capacity. The evidence further shows that Wang served as a guarantor for the liquor license and the American Hoist restaurant's lease, and that Wang had provided advice to his wife and sister-

in-law regarding job applicants, technical support, recipes, and compliance with wage and hour laws.

This evidence demonstrates multiple contacts between Wang and American Hoist. The evidence, however, shows that the extent of those contacts is no more than would be expected between a husband who owns a Sichuan restaurant and a wife who later opens her own Sichuan restaurant with her sisters. Regardless, the relevant inquiry is not the number of contacts between Wang and American Hoist; it is whether those contacts qualitatively show that Wang had the power to control Lee as an American Hoist employee. When construing all disputed facts in favor of Lee, there is still no evidence upon which a jury could reasonably find that Wang had the power to control Lee or the other employees at the American Hoist restaurant such that Wang can be found liable on Lee's minimum wage and overtime claims. Further, even if Lee's evidence could demonstrate a dispute of material fact as to whether Wang was his employer, Lee's evidence, in the face of the defendants' extensive evidence showing Wang's minimal involvement in American Hoist, would be plainly insufficient to show that Wang actually or constructively knew that Lee worked overtime hours at the American Hoist restaurant, as would be required to impose FLSA liability. See Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008) (citing 29 U.S.C. § 203(g)). Therefore, because the evidence is insufficient for a reasonable jury to find that Wang was Lee's employer, Wang is entitled to summary judgment as a matter of law on all of Lee's claims.

## III.    Whether American Hoist Is Entitled to Summary Judgment on Lee's FLSA Claims

### A.    Law Governing Minimum Wage and Overtime

Since July 24, 2009, FLSA has required employers to pay at least a minimum hourly rate of $7.25 to employees for every hour they work. 29 U.S.C. § 206(a). Under 29 U.S.C. § 203(m),

an employee who receives tips may be paid at rate below the minimum wage, "meaning the minimum wage minus the 'tip credit,' so long as the employer '(1) inform[s] the employee of the 'tip credit' provision of the FLSA, and (2) permit[s] the employee to retain all of the tips the employee receives.'" Angamarca v. Pita Grill 7 Inc., 11 Civ. 7777 (JGK)(JLC), 2012 WL 3578781, at *5 (S.D.N.Y. Aug. 2, 2012) (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011)).

FLSA also sets requirements for employers to compensate adequately their employees for working overtime. Under the statute, employers must pay their employees for hours in excess of 40 per week at a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In addition, employers are "required to maintain and preserve records for each employee of, inter alia, (1) the total daily and weekly hours worked, (2) the regular hourly rates of pay for each week in which overtime compensation is due, (3) the total daily and weekly earnings, (4) the total wages paid, and (5) the total weekly premium pay for overtime hours." Moon v. Kwon, 248 F. Supp. 2d 201, 218 (S.D.N.Y. 2002) (citing 29 C.F.R. §§ 516.2, 516.5).

**B.      The Parties' Evidence**

Lee disputes the defendants' assertion that he was paid at a rate of $9.375 per hour, not including Lee's tips and free meals at the restaurant. Lee admits that he was paid a fixed rate of $1,500 per month and that he signed time sheets stating that he worked a maximum of 40 hours per week. Lee asserts, however, that the time sheets he and the other employees signed contained false figures for the number of hours worked and that, based on the true number of hours he worked per week, his hourly pay was below the minimum wage. The only evidence that Lee submits to raise a dispute as to his hours of work is his declaration, in which he states that he

regularly worked 12 to 14 hours per day, seven days a week from July 2011 to January 2012, and

12 to 14 hours per day, five days a week from April to May 2012. (Lee Decl. ¶ 3.) He further

declares:

> The "time sheets" provided by Defendants are inaccurate and contain false information. Defendants forced all employees, including myself, to sign the false "time sheets" in order to receive our pay. In my capacity as general manager, Defendants required me to get the other employees at the [American Hoist] restaurant to sign the "time sheets[,]" even though the information in such "time sheets" was incorrect.

(Id. ¶ 9.)

In support of their proposition that Lee did not work overtime, the defendants submit the

weekly time sheets signed by Lee indicating that he did not work more than 40 hours per week,

and Gao's testimony that she "did not let [her] employees work overtime," "was able to make

sure that the work schedule and actual work hours of [her] employees would not exceed 40 hours

per week," and "never forced employees to sign the schedules." (Gao Reply Decl. ¶¶ 7, 9, 16.)

### C.    Whether the Evidence Shows a Dispute of Material Facts

As stated above, the defendants support their proposed facts regarding Lee's hourly wage

with declarations from Gao and, most importantly for this analysis, weekly time sheets indicating

the number of hours per week each employee worked, with each sheet signed by each employee.

In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the Supreme Court established a

burden-shifting analysis in FLSA cases to determine whether a plaintiff, assuming he could

prove a violation, could show a reasonable basis for calculating damages. See Kuebel v. Black &

Decker Inc., 643 F.3d 352, 364-65 (2d Cir. 2011) (citing Brown v. Family Dollar Stores of IN,

LP, 534 F.3d 593, 596 (7th Cir. 2008)) ("The Anderson test . . . addresses whether there is a

reasonable basis for calculating damages, assuming that a violation [of FLSA] has been

shown."). Under the Anderson framework, the evidentiary burden at the summary judgment

stage for FLSA minimum wage and overtime claims shifts depending on whether the employer maintained adequate and accurate employment records. Thus, as an initial matter, the Court must find whether Lee's "evidence indicat[es] that his employer's records are inaccurate," thus entitling him to Anderson's more lenient burden of proof. Kuebel, 643 F.3d at 363.

### 1.    The **Anderson** Summary Judgment Framework

When an employee brings a claim under FLSA for unpaid compensation, the employee's evidentiary burden to survive an employer's motion for summary judgment depends on the nature of the wage and hour records maintained and produced by the employer. See id. at 361-63 (citing Anderson, 328 U.S. at 684-88). "Ordinarily, an employee seeking to recover unpaid minimum wages or overtime under FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" Moon, 248 F. Supp. 2d at 219 (quoting Anderson, 328 U.S. at 687); see also Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 379-80 (E.D.N.Y. 2012); Garcia v. La Revise Associates LLC, 08 Civ. 9356 (LTS)(THK), 2011 WL 135009, at *8 (S.D.N.Y. Jan. 13, 2011). The employee also must show that the employer had actual or imputed knowledge that the employee was working during those uncompensated hours. See Chao, 514 F.3d at 287 (citing 29 U.S.C. § 203(g)).

The Anderson Court held, however, that where an employer's payroll records are "inaccurate or inadequate," the employee's required showing becomes more lax, as "an employee has carried out his burden if he produces sufficient evidence to show the amount and extent of that work as a matter of *just and reasonable inference*." Anderson, 328 U.S. at 687 (emphasis supplied); see also Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 67 (2d Cir. 1997); Moon, 248 F. Supp. at 219; Berrios, 849 F. Supp. 2d at 379-80. Upon the employee's production of such sufficient evidence, "[t]he burden then shifts to the employer to

come forward with evidence of the precise amount of work performed or with evidence to

negative the reasonableness of the inference to be drawn from the employee's evidence. If the

employer fails to produce such evidence, the court may then award damages to the employee,

even though the result be only approximate." Anderson, 328 U.S. at 687-88.

        In this circuit, when an employer's records are inaccurate or inadequate, a court may find

that an employee has satisfied his burden as a matter of just and reasonable inference where the

employee relies solely on his own recollection of the amount and extent of his uncompensated

work. Kuebel, 643 F.3d at 362 (relying on Anderson, 328 U.S. at 687); see also Doo Nam Yang

v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); Magnoni v. Smith & Laquercia,

LLP, 661 F. Supp. 2d 412, 417 (S.D.N.Y. 2009). "[A]n employee's burden in this regard is not

high." Kuebel, 643 F.3d at 362.

        In most cases in which courts have imposed this lesser burden on the plaintiff under

Anderson, the employer either produced no employment records compliant with FLSA standards

or produced records that, on their face, were plainly inadequate. See, e.g., Reich, 121 F.3d at 63

(employer did not keep records of duties performed by employees during their lunch breaks);

Magnoni, 661 F. Supp. at 417 (employer did not keep records); Doo Nam Yang, 427 F. Supp. 2d

at 332-33 (employer could not produce admissible records); Pineda v. Masonry Const., Inc., 831

F. Supp. 2d 666, 671 (S.D.N.Y. 2011) (employer failed to produce records regarding wages

earned or hours worked); Jemine v. Dennis, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012)

(employer did not keep records); Canela-Rodriguez v. Milbank Real Estate, 09 Civ. 6588 (JSR),

2010 WL 3701309, at *2 (S.D.N.Y. Sept. 20, 2010) (employer admitted it did not keep adequate

or accurate records); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 389 (E.D.N.Y.

2007) (employer's payroll records were not consistently kept and showed the employer did not

keep track of employee hours); <u>Berrios</u>, 849 F. Supp. 2d at 380 (employer's payroll records showed the employer did not keep track of employee hours). Typically in these cases, courts make a finding that the employer's records are inadequate as a matter of law and then proceed to a straightforward application of <u>Anderson</u>. <u>See, e.g.</u>, <u>Moon</u>, 248 F. Supp. 2d at 219 ("Although the defendants insist that they made every effort to comply with federal and state laws, including their respective recordkeeping requirements . . . , the Court finds this testimony inconsistent with the documentary evidence and the credible testimony of other witnesses. . . . Accordingly, the Court finds that the defendants either knowingly violated or, at minimum, acted in reckless disregard of these recordkeeping requirements."); <u>Rivera</u>, 497 F. Supp. 2d at 388 ("The records submitted by defendants . . . do not meet the requirements of federal and state law.").

Where, however, the employer produces facially adequate employment records that are then challenged by the employee as inaccurate, a threshold question is presented: what standard of evidence must an employee satisfy at summary judgment to challenge successfully the employer's facially adequate records such that the employee is entitled to the <u>Anderson</u> "just and reasonable inference" standard? No court has explicitly addressed this question, though the Court of Appeals provided guidance in <u>Kuebel v. Black & Decker</u>.

In <u>Kuebel</u>, the employee brought wage and hour claims under FLSA and the NYLL. On a motion for summary judgment, the employer claimed that the time sheets containing information that the employee himself had recorded prove that he did not work in excess of 40 hours per week. The employee challenged those records, claiming that he did work overtime and that he was instructed by his employer to falsify his time sheets. The district court held that the employee was not entitled to <u>Anderson</u>'s lenient burden of proof because the records were inaccurate as a result of the employee's own falsification. And, because the district court found

that the employee could not sufficiently prove his damages under the heightened standard, it granted the employer summary judgment.

The Court of Appeals reversed. At the outset, the court squarely rejected the proposition that, at least where the employee's record falsifications were carried out at the instruction of the employer, the employer cannot benefit from the heightened standard of proof that would otherwise be required of an employee facing facially adequate records.[6] Kuebel, 643 F.3d at 362-63. The court then recounted Kuebel's testimony and held that, because Kuebel "has presented evidence indicating that his employer's records are inaccurate—and that although it was he who purposefully rendered them inaccurate, he did so at his managers' direction—the district court should have afforded Kuebel the benefit of Anderson's 'just and reasonable inference' standard."[7] Id. at 363.

Although the court did not directly address what standard to apply for the preliminary question of whether the employer's records are adequate and accurate, it is apparent that the Kuebel court applied the "recollection alone" standard that has traditionally been used only in the context of showing a reasonable basis for calculating damages. The court found that Kuebel's purely testimonial evidence as to the records' accuracy was sufficient to trigger application of the

---

[6] In so doing, the Court of Appeals disavowed concerns raised by district courts that "any plaintiff wishing to take advantage of the lesser burden of proof offered by Anderson need do nothing more than fabricate an admission that he 'lied' on his time records, thereby rendering the employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" Seever v. Carrols Corp., 528 F. Supp. 2d 159, 171-72 (W.D.N.Y. 2007). See Kuebel, 643 F.3d at 362-63.

[7] The evidence submitted by Kuebel that the court found sufficient to trigger the lenient Anderson burden consisted of two declarations and deposition testimony in which Kuebel "specifically testified" to (1) the process by which he would "shave his time entry for Friday"; (2) company meetings at which specific supervisors told him and others not to record their overtime; (3) the frequency with which he would falsify time sheets during different periods of his employment; (4) a discussion with a specific supervisor on February 22, 2007, in which the supervisor told him, "you can't work overtime, you're only supposed to put forty hours on your timecard"; and (5) other similar discussions with supervisors for which Kuebel provided timeframes and quotes. Id. at 356-57, 363.

lenient <u>Anderson</u> standard in deciding whether Kuebel's evidence showing his uncompensated overtime was sufficient to survive summary judgment.

At least one district court in this circuit has faced this issue since <u>Kuebel</u> was decided. In <u>Agudelo v. E & D LLC</u>, 12 Civ. 0960 (HB), 2012 WL 6183677, at *3 (S.D.N.Y. Dec. 11, 2012), the employer argued that facially adequate payroll records show that the employer did not commit any wage and hour violations. The employee, however, contended that those records were inaccurate.

The court began its analysis of the defendants' payroll records by stating that the adequacy and accuracy of those records "can be determined in a variety of ways" and that a "plaintiff may, under appropriate circumstances, meet this burden 'by relying on recollection alone.'" <u>Id</u>. For this proposition, the court cited <u>Santillan v. Henao</u>, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011), and <u>Park v. Seoul Broadcasting Sys. Co.</u>, 2008 WL 619034, at *7 (S.D.N.Y. March 6, 2008), both of which, however, cite the "recollection alone" rule in the context of an employer's facially *inadequate* employment records. The <u>Agudelo</u> court then, after summarizing the defendants' argument that the facially adequate payroll records they produced are dispositive for summary judgment, found that the employee's

> evidentiary filings are limited, but include a Declaration from [the employee] that raises genuine issues of material fact when compared with Defendants' contributions to the record, as well as copies of pay stubs that indicate that [the employee's] interpretation of the payroll records is reasonable. A plaintiff's declaration is essentially testimonial in nature, and, assuming it raises genuine issues of fact, requires a credibility determination as to its veracity; credibility issues are for the jury at trial. <u>See, e.g.</u>, <u>Etienne v. Inter–County Security Corp.</u>, 173 F.3d 1372, 1374 (11th Cir. 1999); <u>see also</u> <u>Chung v. New Silver Palace Restaurant, Inc.</u>, 246 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2002) (noting that a district court may not make credibility determinations at the summary judgment stage).

Agudelo, 2012 WL 6183677, at *3. Thus, based on only the plaintiff's declaration and certain corroborating pay stubs, the court concluded that there was a genuine issue of fact as to the accuracy of the employer's records, entitling the plaintiff to the benefit of Anderson's lenient "just and reasonable inference" standard to defeat summary judgment.

Kuebel (and Agudelo) thus support the rule that, where an employer produces facially adequate records in support of its summary judgment motion, a district court should apply Anderson's "just and reasonable inference" standard, which includes finding that testimony based solely on the plaintiff's recollection may be sufficient, to determine whether the plaintiff's evidence raises a genuine issue of material fact as to the accuracy of the records. And, it follows, if an issue of material fact is raised regarding the accuracy of the records, the court must then apply the lenient Anderson standard to determine whether the plaintiff's evidence adequately shows the amount and extent of his uncompensated work as a matter of just and reasonable inference in order to survive summary judgment. See Kuebel, 643 F.3d at 361-62. This approach is consistent with "the Supreme Court's admonition that because FLSA's provisions 'are remedial and humanitarian in purpose,' the statute therefore 'must not be interpreted or applied in a narrow, grudging manner.'" Moon, 248 F. Supp. 2d at 229 (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)). The Court thus adopts this approach here as to whether Lee's evidence shows a genuine dispute of material fact as to the accuracy of the records submitted by the defendants.

> **2.      Whether Lee's Evidence Shows a Genuine Dispute of Material Fact as to His Employment Records' Accuracy**

The defendants produced weekly time sheets that record the total number of hours worked per week for each employee, which days each employee worked, and what time each employee's shift began and ended on each day. (Ex. P.) Each employee signed his or her name

next to the row containing his or her work hours. The defendants also produced payroll records for Lee showing, for each week he worked, his wage, tip amount, income before tax, deduction, and net pay. (Ex. O.) Lee signed his name next to each entry.

Lee's only evidence is his declaration testimony. It consists of three sentences and, unlike in Kuebel, does not include any dates, quotes, descriptions of conversations, or names of individuals who told him to falsify the records. See supra note 7. Lee does, however, include the specifically alleged facts that the defendants "forced all employees, including myself, to sign the false 'time sheets' in order to receive our pay" and that, while Lee was acting as general manager, he was required "to get the other employees . . . to sign the [falsified] 'time sheets.'" As discussed, a plaintiff's recollection alone may be sufficient to raise an issue of material fact as to the records' accuracy. While Lee's testimony is more sparse than that considered by the Kuebel court, it nonetheless states "specific facts" and not just "conclusory allegations." Cf. Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997); Fed. R. Civ. Proc. 56(e). The Court therefore finds that Lee has presented evidence that is at least minimally sufficient to raise an issue of material fact as to whether the defendants' records accurately reflect the number of hours Lee worked per week. Accordingly, Lee can satisfy his evidentiary burden and defeat the defendants' summary judgment motion "if he produces sufficient evidence to show the amount and extent of [his uncompensated] work as a matter of just and reasonable inference." Anderson, 328 U.S. at 687.

### 3.     Whether American Hoist Is Entitled to Summary Judgment as a Matter of Law

The Court finds that Lee's evidence is sufficient such that a reasonable jury could conclude that he has shown the amount of his uncompensated work as a matter of just and reasonable inference. In his declaration, Lee states that, from July 2011 until January 2012, he

worked 12 to 14 hours every day, including weekends, and then worked 12 to 14 hours five days

a week from April 2012 to May 2012. He also testifies that he witnessed other employees

working more than 40 hours per week, though no employee was paid overtime. Finally, Lee

testifies as to the falsification of employee time sheets and the pressure his employer exerted to

coerce him and other employees to sign their names next to the incorrect figures recorded on

their time sheets.

Based on Lee's testimony as to the two periods during which he performed work for

American Hoist and as to the number of hours he worked per week during each of those periods,

a jury may reasonably find that he has fulfilled his burden of proof, thus shifting the burden to

the defendants to produce contrary evidence. Cf. Kuebel, 643 F.3d at 364 ("While this evidence

is not precise, Kuebel's burden under Anderson is, as noted above, not onerous. We conclude that

he may be able, based on this evidence, to prove to a jury that he has met his burden under the

Anderson test and thus to shift to [the defendant] the burden of coming forward with evidence

that either demonstrates the precise amount of work he performed or negates the reasonableness

of the inference created by Kuebel's evidence as to the amount of that work.").

The Court further finds that Lee's evidence raises triable issues of fact as to whether

American Hoist had actual or imputed knowledge that he was working more than 40 hours per

week. See Chao, 514 F.3d at 287 (citing 29 U.S.C. § 203(g)). The Court reasonably infers that, if

the "[d]efendants forced all employees, including [Lee], to sign the false 'time sheets' in order to

receive . . . pay," the defendants had knowledge that Lee and the other employees worked more

than the 40 hours per week stated on the time sheets. In addition, even without this specific

testimony, Lee's evidence that he worked between 84 and 98 hours per week for half a year and

between 60 and 70 hours per week for two months by itself would raise the reasonable inference

that Lee's employer knew or should have known that he worked beyond the standard 40 hours each week.

Therefore, the Court finds that Lee has presented evidence sufficient to raise a genuine dispute of material fact as to how many hours he worked per week (and thus whether American Hoist violated FLSA's minimum wage and overtime requirements), and whether American Hoist had actual or imputed knowledge of his uncompensated overtime work. These are questions of fact that must be resolved by a jury. The Court therefore denies the defendants' motion for summary judgment on Lee's minimum wage and overtime claims.

## IV.    Motion to Voluntarily Dismiss GSE Without Prejudice

On the same day that Lee opposed the defendants' motion for summary judgment, he filed a letter stating his intent to voluntarily dismiss GSE from the action without prejudice. The Court construes Lee's November 1, 2013 letter and November 14, 2013 response to the Court's order to show cause as a motion to dismiss GSE from the complaint without prejudice and without costs and fees awarded to the defendants, and construes the defendants' November 12, 2013 letter as their opposition. While the defendants agree that Lee should be permitted to voluntarily dismiss his claims against GSE, they argue that such dismissal should be with prejudice, but without prejudice to GSE's counterclaims, and that they are entitled to costs and attorneys' fees.

### A.    Law Governing Voluntary Dismissals

Under Federal Rule of Civil Procedure 41(a)(1), "[a] plaintiff is permitted to voluntarily dismiss an action without court order in two situations: 1) the plaintiff files a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or 2) the

plaintiff files a stipulation signed by all parties who have appeared." <u>Emory v. New York</u>, 11 Civ. 1774 (RRM), 2013 WL 1881009, at *2 (E.D.N.Y. May 6, 2013).

Under Federal Rule of Civil Procedure 41(a)(2), if neither of the above circumstances are present, the action may be dismissed only by court order "on terms that the court considers proper." Fed. R. Civ. Proc. 41(a)(2). Rule 41(a)(2) further states, "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph . . . is without prejudice." <u>Id.</u>

"Although voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." <u>Gap, Inc. v. Stone Int'l Trading, Inc.</u>, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) (internal citations omitted); <u>see also</u> <u>Benitez v. Hitachi Metals Am., Ltd.</u>, 11 Civ. 6816, 2012 WL 3249417, at *1 (S.D.N.Y. Aug. 6, 2012) ("[T]here is a general presumption that motions to dismiss claims without prejudice should be granted.").

In <u>Zagano v. Fordham Univ.</u>, the Court of Appeals for the Second Circuit identified the following five factors (the "<u>Zagano</u> factors") that district courts must consider to determine whether a motion for voluntary dismissal should be granted with or without prejudice: (1) the plaintiff's diligence in bringing the motion; (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss. <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d

Cir. 1990)); see also Sec. Exch. Comm. v. Compania Internacional Financiera S.A., 11 Civ. 4904

(JPO), 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) (applying the Zagano factors).

"The Court will analyze each of these factors individually, but no one factor is

dispositive. The crucial inquiry remains whether [the defendant] will suffer substantial prejudice

as a result of a dismissal without prejudice." Sec. Exch. Comm. v. Chakrapani, 9 Civ. 325, 9 Civ.

1043, 2010 WL 2605819, at *2 (S.D.N.Y. June 29, 2010). "A trial court has great discretion in

considering whether to grant a motion for voluntary dismissal under the rule." Lebewohl v. Heart

Attack Grill LLC, 890 F. Supp. 2d 278, 304 (S.D.N.Y. 2012).

Courts applying these factors "frequently place the greatest emphasis on the efforts

expended by the defendant in discovery and trial preparation and the corresponding prejudice the

defendant would suffer if forced to relitigate." Baldanzi v. WFC Holdings Corp., 07 Civ. 9551,

2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010); see also Shaw, 2008 WL 4127549, at *7 ("The

extent to which a suit has progressed is considered by many courts in the Second Circuit to be of

'primary importance.'"); Emory, 2013 WL 1881009, at *3 (granting dismissal with prejudice

where "Plaintiffs seek to dismiss almost two years after the action began, over a year after fact

discovery was concluded, and after multiple motions have been fully-briefed, requiring the

defendants to expend significant time, effort and resources to defend an action that plaintiffs now

concede has no legal merit"). Thus, a primary consideration is when the motion for voluntarily

dismissal was made relative to the discovery period. Whether the motion is made "before

discovery begins in earnest [is] a *Zagano* factor in its own right." S.E.C. v. One or More

Unknown Purchasers of Sec. of Telvent GIT, SA, 11 Civ. 3794, 2013 WL 1683665, at *2

(S.D.N.Y. Apr. 17, 2013).

Regarding awarding costs to the non-moving party, a court's authority to grant dismissal "on terms that the court considers proper" "is frequently exercised to require a plaintiff to pay a defendant the expenses incurred in defending against the suit, once the plaintiff has elected to terminate the suit in favor of litigation elsewhere." Gravatt v. Columbia Univ., 845 F.2d 54, 55 (2d Cir. 1988). In more recent cases, however, "[c]ourts within this circuit have refused to award fees and costs following a Rule 41(a)(2) dismissal absent circumstances evincing bad faith or vexatiousness on the part of the plaintiff." In re Kassover, 98 Civ. 43124 (BRL), 2008 WL 4845757 (Bankr. S.D.N.Y. Oct. 30, 2008) (citing BD ex rel. Jean Doe v. DeBuono, 193 F.R.D. 117, 125 (S.D.N.Y. 2000) (collecting cases)).

### B.  Whether GSE Should Be Dismissed Without Prejudice

To determine whether the Court should grant Lee's motion to dismiss GSE without prejudice, the Court considers the five Zagano factors and the issue of substantial prejudice to the defendants.

### 1.  Diligence

"When analyzing whether a party was diligent or not in bringing a motion, courts have focused on whether or not the moving party encouraged the non-moving party to continue discovery without any intention of pursuing its claims." Shaw Family Archives, Ltd. v. CMG Worldwide, Inc., No. 05 CV 3939 (CM), 2008 WL 4127549, at *5 (S.D.N.Y. Sept. 2, 2008). In addition, "'[i]n order for the plaintiff's delay to militate against a grant of dismissal, the [defendants] must show that [they] expended resources or otherwise detrimentally relied on a reasonable expectation that the plaintiff would pursue its remaining claims.'" A.V. by Versace, Inc. v. Gianni Versace S.p.A., 261 F.R.D. 29, 32 (S.D.N.Y. 2009) (quoting Banco Central De

Para. v. Para. Humanitarian Found., Inc., 01 Civ. 9649 (JFK), 2006 WL 3456521, at *4
(S.D.N.Y. Nov. 29, 2006)).

Lee has shown that he intended on pursuing his claims against GSE until October 25,
2013, when he first proposed a stipulation of dismissal to the defendants. In his complaint, Lee
alleges, "Defendants operated the two Grand Sichuan Eastern restaurants as a common
enterprise. The restaurants shared common ownership, were marketed jointly, shared common
logos and names, and employees were freely interchangeable between the two restaurants."
(Compl. ¶ 8.) Lee pursued this claim and, with respect to GSE's owner Wang, submitted
evidence in his opposition to the defendants' motion for summary judgment that could be found
supportive of the claim. There is no evidence, though, that Lee continued to litigate the claims
against GSE after deciding that he would voluntarily dismiss those claims as to GSE. Further,
after the parties' unsuccessful settlement conference on October 2, 2013, the Court issued an
October 10 order recognizing Lee's intent to dismiss GSE and requiring that a stipulation of
dismissal be filed by November 1, 2013. Lee diligently informed the Court and the defendants of
his intent to voluntarily dismiss GSE from the action and then diligently filed his motion to
dismiss upon the defendants' refusal to sign a stipulation. Because Lee acted with reasonable
diligence, this factor weighs in his favor.

### 2. Undue Vexatiousness

"Courts define 'undue vexatiousness' to mean that the plaintiff acted with 'ill-motive' in
bringing or maintaining its claims." Chakrapani, 2010 WL 2605819, at *3 (quoting Versace, 261
F.R.D. at 32). Where "the plaintiff could have pursued the action with more vigor, [but] there is
no evidence to suggest that the case was brought to harass the defendant," this factor weighs in

favor of the moving party. <u>Hinfin Realty Corp. v. Pittston Co.</u>, 206 F.R.D. 350, 356 (E.D.N.Y. 2002).

The defendants contend that Lee's claims against GSE are "meritless," "frivolous," and "made with the sole purpose to harass Defendants for money." Lee filed his claims against GSE on a "common enterprise" theory based on the considerable overlap and nebulous distinctions between the GSE restaurant and the American Hoist restaurant, both of which share the same name, advertise on the same website, and have several overlapping contacts among the owners. While the Court finds that Wang is entitled to summary judgment because a jury could not reasonably find that he was Lee's employer under the FLSA and NYLL definitions, it does so in light of the extensive evidence presented, not because such an allegation against Wang or GSE was meritless *ab initio*. The Court finds there to be no concrete evidence that Lee acted in bad faith in either filing his claims against GSE or now moving to voluntarily dismiss those claims. <u>See</u> <u>Jewelers Vigilance Comm., Inc. v. Vitale Inc.</u>, 90 Civ. 1476 (MJL), 1997 WL 582823, at *3 (S.D.N.Y. Sept. 19, 1997) ("[A]bsent concrete evidence of any ill-motive on Plaintiff's part, the Court declines to label Plaintiff's conduct 'vexatious.'"); <u>Reynolds v. OneWest Bank, FSB</u>, 11 Civ. 81 (CR), 2011 WL 5357503, at *3  (D. Vt. Nov. 7, 2011) ("Here, although Plaintiff likely could have handled the litigation more efficiently, there is no evidence of 'ill motive.'").

### 3.      Progress of Litigation

Fact discovery in this action closed on July 8, 2013; the defendants filed their motion for summary judgment on August 22, 2013; and the parties participated in a settlement conference on October 2, 2013. Lee's motion to voluntarily dismiss GSE comes almost one year after the action was filed. While Lee's motion comes at a relatively advanced stage of the litigation, no trial date has been set and no dispositive motions had been adjudicated. Further, the fact that

discovery has ended is less salient here where Lee seeks to dismiss only one party and not any claims in their entirety and where all the defendants are represented by the same counsel. In this situation, the bulk of the discovery would have still been necessary had Lee sought to dismiss GSE from the action at an earlier stage. The Court therefore finds this factor to be neutral.

### 4.    Duplicative Expense of Relitigation

"Where discovery can be used in a subsequent action, dismissal [without prejudice] is generally granted." Reynolds, 2011 WL 5357503, at *4 (citing Banco Central de Para., 2006 WL 3456521; see also Compania Internacional Financiera S.A., 2012 WL 185649, at *6 (finding this factor to favor the plaintiff where "much of the expense has been incurred in discovery, and any discovery obtained can be re-used in any future litigation"). Almost all discovery in this matter would be relevant in a subsequent action against GSE and continues to be relevant as against American Hoist. This factor therefore favors Lee.

### 5.    The Plaintiff's Explanation

Lee offers no explanation as to why he is now moving to dismiss GSE from the complaint without prejudice; he only denies that his motive is "to avoid an adverse determination on the merits." In Galasso v. Eisman, Zucker, Klein & Ruttenberg, the court found, "It is quite clear that plaintiff's motive in bringing on this belated motion is to avoid an adverse decision that will forever bind him. But a party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004).

It is not clear here that Lee's motion to dismiss is primarily motivated by fear that summary judgment would be granted in GSE's favor, as the defendants contend. Lee's claims against GSE appear to be premised on the relationship between GSE and American Hoist as

corporate entities. Instead of pursuing this theory, Lee is opting to dismiss GSE and instead focus on evidence of Wang's relationship as an individual with American Hoist. Lee's motivation might be to simplify the issues and streamline the evidence needed for trial, but the Court can only speculate as Lee has provided no explanation. The Court thus resolves this factor against Lee, but does not find that Lee acted with the improper intent of avoiding an adverse decision.

In applying the <u>Zagano</u> factors, the Court finds that Lee's motion to voluntarily dismiss GSE is not unreasonable and would not substantially prejudice the defendants, particularly given that Lee is not dismissing this action or any claims in their entirety. In addition, the Court notes that the fact that the defendants have filed counterclaims is not dispositive under Rule 41(a)(2), as dismissing GSE from the action will not "destroy the Court's subject matter jurisdiction over [the defendants'] counterclaims." <u>Wentworth v. Hedson</u>, 248 F.R.D. 121, 122 (E.D.N.Y. 2008). The Court therefore finds it appropriate to dismiss Lee's complaint as against GSE without prejudice. And, as discussed above in reference to the factor of "undue vexatiousness," the Court does not find that Lee has acted with bad faith. The Court therefore declines to award the defendants fees and costs. <u>See</u> <u>In re Kassover</u>, 2008 WL 4845757, at *3; <u>Gap, Inc. v. Stone Int'l Trading, Inc.</u>, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) ("Although a court may impose attorneys' fees and costs under Rule 41(a)(2), it should do so only when justice so demands.").

**CONCLUSION**

For these reasons, the Court (1) GRANTS the defendants' motion for summary judgment with respect to the defendant An Tong Wang; and DENIES the defendants' motion as to all other relief sought; and (2) GRANTS Lee's motion to voluntarily dismiss his claims as against the defendant Grand Sichuan Eastern (NY), WITHOUT PREJUDICE. The Clerk of Court is directed to terminate the motion pending at Docket No. 38.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:      New York, New York
            January 17, 2014